**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Strong,<br><br>　　　　Plaintiff,<br><br>v.<br><br>City of Buckeye, et al.,<br><br>　　　　Defendants. | No. CV-17-02669-PHX-DWL<br><br>**ORDER** |

Pending before the Court is a motion for summary judgment filed by the City of Buckeye (the "City") and Cheryl Sedig ("Sedig") (collectively, "Defendants"). (Doc. 26.) The motion is fully briefed and nobody has requested oral argument. For the following reasons, the Court will grant the motion with respect to Plaintiff Douglas Strong's ("Strong") § 1983 claim and will remand the remaining state-law claims to state court.

**BACKGROUND**

I.　Factual History

The City employed Strong on two separate occasions—the first beginning in December 2005 and ending in September 2008, and the second beginning during the summer of 2012 and ending in September 2016. (Doc. 27 ¶¶ 1, 2, 9, 10, 47.) The second period of employment gives rise to this action.

In summer 2012, Strong began working as a Recreation Coordinator in the City's Community Services Department ("CSD"). (*Id.* ¶ 10.) Strong reported to Sedig, the CSD director, during the entirety of his second period of employment. (*Id.* ¶ 13.) In August

2013, Sedig promoted Strong to Management Assistant and he received a raise of approximately $20,000. (*Id.* ¶ 14.)

During 2014 and 2015, Strong was counseled or warned on several occasions about performance deficiencies. (*Id.* ¶ 16.) These warnings culminated in Strong being placed on a performance improvement plan ("PIP") in August 2015. (*Id.* ¶¶ 17-19.) In October 2015, Sedig notified Strong that he would be fired based on his failure to comply with the PIP, but after Strong challenged this notice, he was allowed to continue working. (*Id.* ¶¶ 20-24.)

In February 2016, Strong was summoned to jury service in Maricopa County Superior Court, and he served on a jury from March 8 to April 11, 2016. (*Id.* 25; Doc. 32 ¶ 28B.) Strong was paid his full salary during his jury service and the City didn't assign Strong any additional work while he was serving. (Doc. 27 ¶¶ 38, 26.)

Defendants claim there were three assignments Strong was required to complete before he began his jury service: (1) preparing, posting, and distributing the necessary documents for a board meeting by March 6, 2016, (2) preparing the "Eye on Buckeye" community newsletter, and (3) making others aware of a special event application that would require attention while he was serving on the jury. (*Id.* ¶¶ 27, 28, 31, 36.)

As to the first assignment—preparing, posting, and distributing the documents for the board meeting—Strong asserts he was unable to post or distribute the agenda for the meeting because he needed Sedig's approval, which she didn't provide. (Doc. 32 ¶ 28G.) Strong points to evidence that he delivered a draft agenda to Sedig before March 3, 2016. (*Id.* ¶ 28C.) Strong also identifies an email he sent to Sedig on March 6, 2016, in which he sought approval to finalize the draft agenda. (*Id.*) Strong claims Sedig didn't respond by the deadline. (*Id.* ¶ 28E.) Because he didn't have Sedig's approval for the draft agenda, Strong argues, he wasn't able to post or distribute the agenda. (*Id.* ¶ 28G.)

With respect to the second assignment, Strong argues his failure to complete the community newsletter before his jury service wasn't his fault because he couldn't set the newsletter for design or printing until he received a letter/message from the Mayor of

Buckeye, who failed to respond to a request from Strong. (*Id.* ¶ 31D, E.) Further, Strong notes that he delegated the assignment to another employee with instructions on how to complete it. (*Id.* ¶ 35A.)

As for the third assignment, Strong disputes that he didn't make others aware of the special event application. In support of his position, Strong produces an email in which he sent the application to various departments within the City and even copied Sedig. (*Id.* ¶ 36B.)

On April 12, 2016, Sedig issued a two-day disciplinary suspension to Strong for failing to complete those three assignments. (Doc. 27 ¶ 39.) Sedig warned Strong that if his performance didn't improve immediately, he would be subject to additional disciplinary action. (*Id.*)

Defendants contend that, after Strong served his suspension, his performance issues continued. (*Id.* ¶ 41.) For example, Defendants cite an email Sedig sent to Strong on May 17, 2016, in which Sedig noted that Strong failed to arrive and leave at his designated times, communicate, complete tasks as assigned, and prioritize his work. (*Id.* ¶ 41a.) Defendants also present evidence that Strong failed to notify Sedig that he would be out of the office (*id.* ¶ 41b) and that Strong missed a deadline for an assignment Sedig had given him several months earlier, despite several reminders (*Id.* ¶ 41c). Finally, Defendants argue Strong engaged in divisive behavior, including by emailing an article to others in CSD entitled "Ten Signs Your Manager Wants You Out." (*Id.* ¶ 41d.) Strong acknowledges that Sedig provided him with written reprimands and warnings of alleged performance deficiencies but disputes whether they were valid or justified. (Doc. 32 ¶ 41.)

On August 23, 2016, Sedig issued a final written reprimand and warning to Strong, identifying three areas of concern: substandard or incomplete work product, lack of collaboration with and support of coworkers, and lack of communication with her. (Doc. 27 ¶ 42.)

On September 6, 2016, Strong resigned, stating he could no longer work for Sedig. (*Id.* ¶ 47.)

II.  Procedural History

On April 13, 2017, Strong filed a complaint in Maricopa County Superior Court against Defendants. (Doc. 1-1 at 4-11.) He amended the complaint on July 19, 2017. (*Id.* at 17-28.) The amended complaint alleges six counts: (1) violation of right to serve on jury; (2) religious discrimination in violation of 42 U.S.C. § 1983 and the Arizona Civil Rights Act, (3) religious discrimination and retaliation in violation of the Arizona Civil Rights Act; (4) retaliatory discharge in violation of A.R.S. §§ 23-1501 and 41-1464; (5) intentional infliction of emotional distress; and (6) breach of contract. (*Id.*)

On August 8, 2017, Defendants removed the action to this Court. (Doc. 1.)

On July 31, 2018, the Court held a telephonic pre-motion hearing, during which Strong conceded he couldn't maintain his claims under Title VII (Count 2) or the Arizona Civil Rights Act (Count 3). (Doc. 25.)[1]

On September 14, 2018, Defendants filed a motion for summary judgment on the remaining counts—Counts 1, 4, 5, and 6. (Doc. 26.)

**DISCUSSION**

I.  Legal Standard

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting

---

[1] Based on this concession, Counts 2 and 3 are dismissed with prejudice.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

II.     Discussion

    A.     **Federal Claim: Violation Of Right To Serve On Jury**

        1.     <u>Parties' Arguments</u>

In Count 1, Strong alleges "[t]he acts, policies and practices of Defendants, as alleged herein above, violated Plaintiff's obligations and rights, under the United States and Arizona constitutions and the laws of the state of Arizona, to participate in judicial process as a juror." (Doc. 1-1 at 24 ¶ 41.) Although Strong doesn't specifically invoke 42 U.S.C. § 1983 in this count, the Court will construe Count 1 as invoking § 1983 to the extent Strong argues his federal constitutional rights were violated.

Defendants move for summary judgment on Strong's § 1983 claim for four reasons. (Doc. 26.) First, Defendants argue they didn't violate any of Strong's constitutional rights. (*Id.* at 5-6.) Second, they contend the City can't be held liable on a theory of *respondeat superior* under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* at 6-7.) Third, they assert that Sedig is entitled to qualified immunity because she didn't violate a "clearly established statutory or constitutional right." (*Id.* at 7.) Fourth, they argue that, as a factual matter, Strong wasn't disciplined because he served on a jury. (*Id.* at 7-8.)

In his opposition brief (Doc. 31), Strong responds to Defendants' first argument by identifying two cases that, in his view, "recognize[] the basis for a constitutional right to serve as a juror": (1) *United States v. Cannady*, 54 F.3d 544 (9th Cir. 1995), and (2) *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973). (*Id.* at 6-7.) Strong doesn't address Defendants' second argument (the City's liability under *Monell*). (*Id.*) As for Defendants' third argument (qualified immunity), Strong argues—in a passage devoid

of any case citations—that "the right of a juror in a criminal trial to be free from intrusion and punishment by the state is not a new concept" and is "clearly implied" by the Sixth Amendment. (*Id.* at 10.) As for Defendants' fourth argument, Strong contends he couldn't have completed two of the three projects before leaving for jury service (because he was awaiting approvals and responses from others), and he completed the third project, so the discipline imposed against him necessarily must be based on his failure to work while serving as a juror. (*Id.* at 7-9.)

### 2. Analysis

Both Defendants are entitled to summary judgment, albeit for different reasons.

The doctrine of qualified immunity forecloses Strong's § 1983 claim against Sedig. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). A government official's conduct violates "clearly established" law when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (citation omitted). Although there need not be a "case directly on point," "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Here, Strong hasn't come close to identifying any "clearly established" law supporting his claim. In *Cannady*, the first case cited by Strong, a group of criminal defendants sought to challenge the Central District of California's procedure for summoning potential jurors on the ground that it led to the underrepresentation of certain ethnic minorities. 54 F.3d at 545-46. Here, of course, Strong wasn't charged with any crimes and thus isn't complaining about the composition of a jury that was asked to assess his guilt. Moreover, although *Cannady* also contains a passage that seems to touch upon the rights of individuals to serve on juries—"Potential jurors have no right, pursuant to either the Sixth Amendment or § 1861, to participate in a jury selection plan in the division

or district of their choice. Their constitutional right is simply to be included in the jury selection plan of a district or division" (*id.* at 548)—that dicta[2] doesn't help Strong because his complaint in this case isn't that he was somehow excluded from the Maricopa County Superior Court's jury selection plan.

The other case cited by Strong, *Rodriguez*, is even less helpful to his position. As Defendants aptly put it in their reply brief, "Plaintiff's attempt to apply [*Rodriguez*] to the issues in this case are beyond comprehension. The *Rodriguez* case was brought by low-income families, alleging that a school system based on local property taxation violated the Equal Protection Clause. Significantly, the Court held that the system did not violate the Constitution. The case does not discuss jury service, and to the extent that it somehow could be applied to this case, demonstrates that not everything in which a citizen participates is entitled to constitutional protection." (Doc. 36 at 6.)

Although it "is often beneficial" to begin the qualified-immunity analysis by addressing whether a statutory or constitutional right has been violated, district courts are vested with discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Additionally, "a longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Camreta v. Greene*, 563 U.S. 692, 705 (2011) (citations omitted). Given these principles, it is unnecessary to decide, under the first prong of the qualified-immunity test, whether the Sixth Amendment actually confers an individual right to serve as a juror in a criminal case.[3] Sedig is entitled to summary

---

[2]    Other courts have characterized this passage from *Cannady* as dicta. *United States v. Conant*, 116 F. Supp. 2d 1015, 1020 n.4 (E.D. Wis. 2000) ("The court does note that the statement was dicta unnecessary for resolving the question then at issue—whether a particular judicial district's jury selection plan violated the fair cross section requirement of the Sixth Amendment—and is unsupported by the caselaw there cited.").

[3]    Although the dicta from *Cannady* can be interpreted as recognizing such a right, the Ninth Circuit has stated that "[n]o court . . . has ever held that the Sixth Amendment protects the rights of anyone other than criminal defendants." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (citations omitted). *See also Cain v. Woodford*, 2003 WL 27376296, *25 (C.D. Cal. 2003) ("It is well established that jury service is not a fundamental right, rather it is characterized as an 'honor and privilege.'") (citations

judgment under the second prong of the qualified-immunity test because Strong hasn't identified any clearly-established law supporting his claim. *Cf. Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015) ("If indeed the [Defendants] did not violate clearly established law, then we can determine that qualified immunity is appropriate and may thus dispose of the case without undertaking an analysis of whether a constitutional violation occurred in the first instance.").[4]

The remaining Defendant, the City, is also entitled to summary judgment. Strong has not adduced any evidence that the City pursued a formal policy, practice, or custom of preventing its employees from participating in the judicial process as jurors. Nor has Strong adduced any evidence that the alleged violation in this case was committed or ratified by an official with final policy-making authority. Indeed, Strong's brief doesn't even attempt to address the *Monell*-related arguments contained in Defendants' motion.

B. **State Claims**

Remaining before the Court are Strong's state-law claims: Count 4 (retaliatory discharge in violation of A.R.S. §§ 23-1501 and 41-1464); Count 5 (intentional infliction of emotional distress); and Count 6 (breach of contract).

In most instances, when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1169

---

omitted). Furthermore, the Sixth Amendment isn't framed as extending any rights to jurors or potential jurors. To the contrary, its text suggests that such rights belong to the accused. U.S. Const. amend VI ("In all criminal prosecutions, *the accused shall enjoy* the right to a speedy and public trial, by an impartial jury . . . .") (emphasis added).

[4] This outcome should not be viewed as a conclusion that jurors lack any constitutional rights in connection with jury service or selection. For example, a multitude of cases have recognized a juror or potential juror's Fourteenth Amendment right not to be excluded from a jury on account of membership in a suspect class. *See, e.g., Powers v. Ohio*, 499 U.S. 400, 409 (1991) ("An individual juror does not have a right to sit on any particular petit jury, but he or she does possess the right not to be excluded from one on account of race."); *Batson v. Kentucky*, 476 U.S. 79, 87 (1986) ("As long ago as *Strauder* . . . the Court recognized that by denying a person participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror.").

(9th Cir. 2002) ("Because the district court did not err in granting summary judgment on the federal claims, it did not abuse its discretion in dismissing the state-law claims.").

Here, the only *Carnegie-Mellon* factor weighing in favor of retaining jurisdiction over Strong's state-law claims is judicial economy. This case has been pending in this Court for more than 18 months and the parties have completed discovery. These considerations, however, doesn't move the needle in favor of retaining jurisdiction in light of the other *Carnegie-Mellon* factors. For example, the Maricopa County Superior Court is a convenient forum because all parties reside in Maricopa County. (Doc. 1-1 at 18 ¶ 7.) Fairness also weighs in favor of declining jurisdiction. After all, Strong filed this case in Maricopa County Superior Court and Defendants were the ones who chose to remove it based on federal question jurisdiction. Because there is no longer a federal question to be considered, Strong's choice of forum should be entitled to some weight. *Cf. Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1222 (9th Cir. 2011) (noting "the strong presumption in favor of a domestic plaintiff's choice of forum"). Finally, considerations of federalism and comity are best served by allowing the Arizona state courts to address state-law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Thus, the Court will decline to exercise jurisdiction over the remaining state-law claims and remand them to the Maricopa County Superior Court.[5]

Accordingly, **IT IS ORDERED** that:

(1) Counts 2 and 3 are dismissed with prejudice, based on Strong's concession during the pre-motion hearing;

(2) Defendants' motion for summary judgment (Doc. 26) is **granted in part** as to Count 1; and

…

---

[5] Consequently, the Court will deny Defendants' request for attorneys' fees under A.R.S. § 12-341.01 without prejudice.

(3) The Clerk of Court shall **remand** this case to the Maricopa County Superior Court and then **terminate** this action

Dated this 6th day of May, 2019.

_____
Dominic W. Lanza
United States District Judge